UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Sharon Begin**

    v.                                      Case No. 20-cv-349-PB
                                                    Opinion No. 2021 DNH 146

**Andrew Saul, Commissioner**
**Social Security Administration**


**MEMORANDUM AND ORDER**

Sharon Begin challenges the denial of her application for disability insurance benefits pursuant to 42 U.S.C. § 405(g). Her principal arguments are that the Administrative Law Judge ("ALJ") who considered her application failed to properly evaluate her fibromyalgia and the medical opinion evidence supporting her application. The Commissioner, in turn, moves for an order affirming the ALJ's decision. For the following reasons, I deny Begin's motion and affirm the Commissioner's decision.

## I.   BACKGROUND

### A.   Procedural Facts

Begin is a 56-year-old woman with a high school education who worked as a veterinary technician until October 2013. She alleged disability as of November 1, 2013, due to fibromyalgia, arthritis, sleep apnea, cervical spondylosis, insomnia, myofascial pain, osteoporosis, and Dupuytren's contracture.

Begin's application was initially denied in June 2018.  On February 13, 2019, she testified at a hearing before ALJ Tracy LaChance, who ultimately denied her application.  See Tr. 7-22.  The Appeals Council denied her request for review in January 2020, rendering the ALJ's decision the final decision of the Commissioner.  See Tr. 1-6.  Begin now appeals.

**B.   Medical Evidence**

In June 2012, Begin suffered a work-related injury to her neck and right elbow while restraining a large dog.  She continued to work and reinjured the same area in a similar fashion in November 2012.

After physical therapy provided only minor improvement, Begin underwent cervical spine surgery in May 2013.  Postoperative x-rays showed "intact hardware and alignment of cervical spine."  Tr. 240.  Six weeks later, Begin had "minimal postoperative axial neck pain but significant improvement of radicular symptom."  Tr. 251.

At her next postoperative appointment in August 2013, Dr. Robert McLellan noted "excellent resolution of symptoms" and referred Begin for physical therapy "for purposes of conditioning to point where she would be able to do her regular full duty job as a vet technician."  Tr. 253.  Dr. McLellan also released her to part-time sedentary work at that time.  Tr. 253.

Two months later, Dr. McLellan noted that Begin was engaging in "light to medium housework" and reporting muscular soreness in her left shoulder, but she had "minimal neck pain." Tr. 255. He also noted that "her work capacity may plateau at a lighter capacity" and released her to six hours of sedentary work. Tr. 255-56. Dr. McLellan increased her capacity to eight hours of sedentary work in February 2014, noting that Begin had completed her physical therapy in December and had "maxed out at about 20 pounds" in terms of her weight-lifting capacity. Tr. 257-58.

In November 2014, Begin had a postoperative follow-up visit with Drs. Timothy Lin and William Abdu. She reported "doing quite well" since her last visit and that the neck and arm pain she had prior to the surgery were "almost completely resolved." Tr. 259. She complained of "some pain in the posterior aspect of her neck . . . that seems to be muscular in nature," and that she had "plateaued with regards to improvement in strength." Tr. 259. Dr. Lin wrote in the treatment notes that he had filled out worker's compensation paperwork allowing Begin to continue working two six-hour days per week with a forty-pound maximum weight limit and minimal sitting. Tr. 260. Dr. Abdu agreed with Dr. Lin's assessment. See Tr. 260.

In March 2015, Begin reported to her primary care physician, Dr. Courtney Farrell, that she was "active" but that

3

her exercising was limited due to a snowshoeing injury. Tr. 269, 271. Two months later, Begin reported during a consultation for management of osteoporosis that she was "quite active," doing "some weight bearing exercise," and feeling well, although she had noticed sleep problems and daytime fatigue. Tr. 277.

At her next appointment with Dr. Farrell in December 2015, Begin complained of right elbow pain that she had noticed while kayaking that summer, as well as mental fogginess. Tr. 280. Later that month, Begin was evaluated for neck pain. Dr. Stephen Lordon believed that the pain was myofascial in nature and recommended physical therapy and ibuprofen. Tr. 289.

In February 2016, Begin reported to Dr. Ayyuppa Duba that she was experiencing fatigue, nonrestorative sleep, and occasional pain over her elbows. She also reported working out every day and going to the pool without worsening fatigue or muscle aches. Tr. 298. Dr. Duba noted that, once other causes were ruled out, fibromyalgia should be considered in light of Begin's sleep problems and findings of tender points above and below the waist. Tr. 302. Dr. Daniel Albert agreed with Dr. Duba and diagnosed Begin with fibromyalgia. Tr. 302-03.

Begin followed up with Dr. Lordon regarding her neck pain in February 2017. She reported that the pain is "nearly 100% relieved by ibuprofen." Tr. 312. Dr. Lordon noted that her

4

symptoms were consistent with cervical facet arthritis and recommended a medial branch nerve block, to which Begin agreed. Tr. 315. Although it "did seem to help," the procedure itself was so painful that Begin declined a second nerve block. Tr. 320.

At a follow-up appointment for her fibromyalgia in October 2017, Begin reported not waking up refreshed but that, overall, she was "doing OK" and exercising regularly. Tr. 320. She described her pain as a "3" on a 1-to-10 scale. Tr. 320. Her provider noted that Begin's fibromyalgia seemed "stable" on medication. Tr. 323. A subsequent sleep study showed that Begin suffered from moderate obstructive sleep apnea, which was severe during REM. Tr. 211.

In connection with her disability application, Begin had an orthopedic evaluation with Dr. Frank Graf in June 2018. She reported fatigue, difficulty in word and date recall, tremors in her hands, problems with balance, light sensitivity, and chronic neck and back pain. Tr. 347. Dr. Graf's examination showed a reduction in her cervical range of motion, pain on palpation in her neck and back, as well as increased sensitivity in the sciatic notches. Tr. 348. He stated that Begin "is impacted by difficulty in maintaining concentration and pace with symptoms of fatigue." Tr. 348. After opining that Begin "may have a

5

neurological disorder," Dr. Graf wrote that such a diagnosis would require further examination and testing.  Tr. 348.

Later that month, Dr. John MacEachran, a state agency physician, reviewed Dr. Graf's examination report, Begin's treatment notes from December 2012 to October 2017, as well as a function report completed by Begin in March 2018.  See Tr. 59-62.  Dr. MacEachran agreed that Begin suffered from fibromyalgia and back disorders, noting her history of surgery, continued treatment for myofascial pain, allegations of fatigue, and diagnosis of sleep apnea.  Tr. 61-62.  He then provided a function-by-function assessment of Begin's abilities and limitations, opining that she could perform a reduced range of light-exertion work despite her impairments.  See Tr. 64-65.  Specifically, Dr. MacEachran opined that Begin could lift and carry twenty pounds occasionally and ten pounds frequently, stand or walk for about six hours, and sit for about six hours in an eight-hour workday.  Tr. 64.  In addition, he specified that Begin had postural limitations, such as only occasional climbing, stooping, crouching, kneeling, and crawling.  Tr. 64.  Dr. MacEachran wrote that Begin's complaints of fatigue and concentration issues "cannot be fully ascribed to any of [her] impairments."  Tr. 65.

After Dr. MacEachran's assessment, Begin had a follow-up appointment for fibromyalgia in October 2018 with Dr. Alicia

6

Zbehlik.  Begin complained of exhaustion and pain, especially after particularly active days.  She also reported that she was sleeping well using trazadone but not waking up refreshed.  Tr. 391-92.  Begin told Dr. Zbehlik that she was rarely taking Flexeril but that it did relieve her neck pain.  Tr. 392.  She again rated her pain at about "3" and reported exercising regularly.  Tr. 392.  Dr. Zbehlik noted that Begin was "overall doing well" in terms of managing her fibromyalgia and "doing a good job of remaining active."  Tr. 395.  They also discussed fatigue management.

**C.   The ALJ's Decision**

The ALJ assessed Begin's claim under the five-step, sequential analysis required by 20 C.F.R. § 404.1520.  At step one, she found that Begin had not engaged in substantial gainful activity since November 1, 2013, her alleged disability onset date.  Tr. 13.  At step two, the ALJ found that Begin had severe impairments of fibromyalgia, degenerative disc disease of the cervical spine, and obstructive sleep apnea.  Tr. 13.  At step three, the ALJ determined that none of Begin's impairments, considered individually or in combination, qualified for any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 14; see 20 C.F.R. § 404.1520(d).

The ALJ then found that Begin had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R.

7

§ 404.1567(b), except she could only stand and walk for six hours and sit for six hours in an eight-hour workday, with certain postural limitations. Tr. 14. In addition, the ALJ restricted Begin to "simple, routine tasks for two-hour blocks," Tr. 14, describing it as a "commonsense restriction" based on Begin's persuasive testimony about experiencing "brain fog" and difficulty performing tasks. Tr. 17.

The ALJ found Dr. MacEachran's opinion persuasive, noting that it was consistent with, and well supported by, Begin's treatment records. Tr. 15. The ALJ also explained that Dr. MacEachran's opinion was the only medical opinion in the record that included a full function-by-function assessment of Begin's abilities and limitations and that Dr. MacEachran was familiar with the SSA's program rules and evidentiary requirements. Tr. 17. Acknowledging that additional treatment notes became part of the record after Dr. MacEachran's review, the ALJ found that those "notes do not contain any evidence of meaningful change or deterioration" in Begin's condition. Tr. 15.

The ALJ did not find persuasive the opinions of Drs. Lin and Abdu that Begin could work only on a part-time basis, explaining that neither provided a full functional assessment of Begin's abilities and limitations, "nor did they provide any written support or explanation for the restriction to part-time work." Tr. 17. Likewise, the ALJ found unpersuasive Dr.

McLellan's limitation of sedentary work because he did not provide any explanation to support this opinion or reconcile it with treatment notes showing that Begin was lifting up to twenty pounds while doing housework.  Tr. 17.

Relying on the testimony of a vocational expert ("VE"), the ALJ then found at step four that Begin could not perform her past relevant work.  Tr. 17.  But the ALJ found at step five that other jobs existed in the national economy that Begin could perform, including a bench assembler, cashier II, and mail clerk.  Tr. 18.  Accordingly, the ALJ concluded that Begin had not been disabled from the alleged disability onset date through the date of her decision.  Tr. 18-19.

## II.  **STANDARD OF REVIEW**

I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  See 42 U.S.C. § 405(g).  That review is limited, however, "to determining whether the [Commissioner] used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  I defer to the Commissioner's findings of fact so long as those findings are supported by substantial evidence.  Id.  Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a

9

whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the Commissioner's findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. But his findings are not conclusive "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). "Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [him], not for the doctors or for the courts." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (cleaned up).

### III.  **ANALYSIS**

Begin argues that a remand is required for four reasons: (1) the ALJ failed to follow Social Security Ruling ("SSR") on the evaluation of fibromyalgia, SSR 12-2p, 2012 WL 3104869 (July 25, 2012); (2) the ALJ improperly weighed medical opinion evidence in the record; (3) the ALJ's RFC finding is not supported by substantial evidence; and (4) the ALJ's step five

10

finding is unsupported because she relied upon faulty vocational expert testimony. I address her arguments in turn.

**A.   <u>Compliance with SSR 12-2p</u>**

The ALJ found Begin's fibromyalgia to be a severe impairment at step two of the sequential analysis. Begin argues that the ALJ failed to follow SSR 12-2p, the applicable agency guidelines, when evaluating that condition in subsequent steps of the analysis. She has not identified, however, how the ALJ's analysis of her fibromyalgia ran afoul of the procedure outlined in SSR 12-2p. Instead, she merely points out that the ALJ did not cite SSR 12-2p in her opinion. But "that omission does not establish reversible error in the absence of any showing that the decision is materially inconsistent with the regulation." Diaz v. Acting Com'r, 2015 DNH 174, 2015 WL 5331285, at *2 (D.N.H. Sept. 14, 2015). Begin has not made that showing here.

To the extent Begin argues that the ALJ's finding that her fibromyalgia was a severe impairment compelled the ALJ to accept her testimony about disabling fatigue and pain, she is mistaken. Begin testified that since late 2013, she was "exhausted all the time," "had the pain all over," and "couldn't accomplish tasks" because she "was having a hard time focusing on things." Tr. 42. The ALJ found that Begin's subjective complaints were not entirely consistent with the record evidence. The ALJ's finding is entitled to deference.

11

SSR 12-2p directs the ALJ to examine the entire case record when evaluating such complaints, including objective medical evidence, the claimant's own statements and subjective complaints, and any other relevant statements or information in the record.  See 2012 WL 3104869, at *5.  Further, the First Circuit has held that an ALJ who accepts a fibromyalgia diagnosis must accept that the claimant suffers from the typical associated symptoms "unless there [is] substantial evidence in the record to support a finding that claimant did not endure a particular symptom or symptoms."  Johnson v. Astrue, 597 F.3d 409, 414 (1st Cir. 2009) (quoting Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994)).

Substantial evidence supports the ALJ's finding that Begin's subjective complaints of disabling fatigue and pain resulting from her fibromyalgia were not entirely consistent with the record.  As the ALJ explained, despite her complaints of fatigue, treatment notes did not describe Begin as fatigued during examinations.  Instead, her providers described her on various occasions as "well-appearing," "alert," and "healthy and in no apparent distress."  Tr. 264, 273, 292, 304, 308, 378.  Further, the ALJ found Begin's complaints inconsistent with her reports that she was regularly exercising, being active, and engaging in household management.  Lastly, the ALJ relied on Dr. MacEachran's opinion that clinical examination did not suggest

12

any major cognitive impairment owing to fatigue, as well as the lack of evidence that Begin had followed through with Dr. Zbehlik's suggestions for fatigue management. Thus, contrary to Begin's suggestion, the ALJ considered the longitudinal record rather than focusing only on her "good days." Cf. SSR 12-2p, 2012 WL 3104869, at *6 (advising ALJ to "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'"). The ALJ's decision to discount Begin's subjective statements concerning the intensity, persistence, and limiting effects of her fibromyalgia is therefore entitled to deference.

**B.   Evaluation of the Medical Opinion Evidence**

Begin contends next that the ALJ improperly found Dr. MacEachran's opinion to be persuasive because the opinion was based on a significantly incomplete record. She also argues that the ALJ erred in discounting the opinions of her treating providers. Neither argument has merit.

It can be reversible error for an ALJ to rely on an opinion of a non-examining consultant who has not reviewed the full medical record. Byron v. Saul, 2019 DNH 131, 2019 WL 3817401, at *6 (D.N.H. Aug. 14, 2019); Brown v. Colvin, 2015 DNH 141, 2015 WL 4416971, at *3 (D.N.H. July 17, 2015); Ferland v. Astrue, 2011 DNH 169, 2011 WL 5199989, at *4 (D.N.H. Oct. 31, 2011). But "the fact that an opinion was rendered without the

13

benefit of the entire medical record does not, in and of itself, preclude an ALJ from giving significant weight to that opinion." Meldrem v. Colvin, 2017 DNH 096, 2017 WL 2257337, at *2 (D.N.H. May 23, 2017) (quoting Coppola v. Colvin, 2014 DNH 033, 2014 WL 677138, *8 (D.N.H. Feb. 21, 2014)).  An ALJ may rely upon such an opinion "where the medical evidence postdating the reviewer's assessment does not establish any greater limitations, or where the medical reports of claimant's treating providers are arguably consistent with, or at least not 'clearly inconsistent' with, the reviewer's assessment."  Id. (quoting Ferland, 2011 WL 5199989, at *4).

An ALJ bears the burden of showing that either of these conditions is present and must make that determination "adequately clear."  Giandomenico v. U.S. Soc. Sec. Admin., 2017 DNH 237, 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017).  In doing so, an ALJ may not interpret "raw medical data . . . until its functional significance is assessed by a medical expert." Id. at *5; see Manso-Pizzaro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996).  But she may make "common-sense judgments about functional capacity based on medical findings," within "the bounds of a lay person's competence."  Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990).  Such judgments are possible "where the evidence shows a 'relatively mild physical impairment posing, to the layperson's

14

eye, no significant restrictions.'" Giandomenico, 2017 WL 5484657, at *4 (quoting Roberts v. Barnhart, 67 F. App'x 621, 623 (1st Cir. 2003)).

Dr. MacEachran rendered his opinion in June 2018, based on his review of extensive medical records. The ALJ acknowledged that there were additional treatment notes that post-date his opinion, but she found that those notes did not show a functionally meaningful deterioration in Begin's condition. The ALJ did not rely upon raw medical data in reaching that conclusion but "instead focused on treatment notes interpreting raw diagnostic results and symptom comparisons across the record." Marino v. U.S. Soc. Sec. Admin., 2018 DNH 191, 2018 WL 4489291, at *6 (D.N.H. Sept. 19, 2018). Specifically, the only new treatment notes that pertain to fibromyalgia show that Begin reported exhaustion after "a particularly active day" but that she was exercising regularly, "overall doing well and doing a good job of remaining active." Tr. 391-92, 395. There were similar reports in the records that Dr. MacEachran reviewed. Thus, the ALJ acted within the bounds of lay competence when she concluded that the new treatment notes were not inconsistent with Dr. MacEachran's opinion and that they did not convey any deterioration in Begin's condition.[1]

---

[1] Begin lists certain other records that Dr. MacEachran did not review, but she makes no argument as to how this evidence

15

Further, the ALJ's conclusion that the opinions of Begin's treating providers were not persuasive is supported by substantial evidence. The SSA's new rule for evaluating medical opinions does not extend controlling weight to a treating medical opinion but instead deems supportability of the opinion and consistency with other evidence to be "the most important factors." 20 C.F.R. § 404.1520c(b)(2). Applying that rule, the ALJ found that the opinions of Begin's treating providers were neither well supported nor consistent with the record. Her providers limited Begin to either part-time or sedentary work without identifying any supporting records or explaining the rationale for their opinions. Further, as the Commissioner points out, those opinions were not based on Begin's symptoms associated with fibromyalgia but on her work-related orthopedic injury that was successfully treated with surgery and physical therapy. Accordingly, Begin's attempt to impugn the ALJ's evaluation of the medical opinion evidence fails.

C.  **Supportability of the RFC Finding**

Begin also argues that the record, considered as a whole, does not support the ALJ's RFC finding. Instead of finding fault with the evidence upon which the ALJ relied, she merely

---

demonstrates a deterioration in her condition. In any event, the ALJ considered those records and supportably concluded that they are consistent with Dr. MacEachran's opinion.

16

points to other evidence that she contends supports a more restrictive RFC. To the extent she is asking me to reweigh the evidence, I cannot do so. See Irlanda Ortiz, 955 F.2d at 769. I can review only the sufficiency of the evidence, not its weight, and there was certainly evidence in the record, discussed above, that a reasonable person would accept as adequate to support the ALJ's RFC finding. See id.

It is true, as Begin points out, that there is other evidence in the record supporting further restrictions to her RFC. The ALJ did not ignore the evidence on which Begin relies. Instead, she considered that evidence and reasonably found that it was inconsistent with other substantial evidence in the record. Because it is the ALJ's job to choose between two conflicting views of the evidence, her RFC finding is conclusive. See Purdy, 887 F.3d at 13.

**D.  Step Five Challenges**

Begin advances several challenges to the ALJ's finding at step five of the sequential analysis that she could perform jobs in the national economy such as a bench assembler, cashier II, and mail clerk. Her arguments, however, are not persuasive.

First, Begin argues that the ALJ posed a deficient hypothetical question to the VE because she did not specify that Begin must elevate her legs to waist level when seated. "The ALJ was required to include in [her] RFC finding and consequent

17

hypothetical questions only those limitations [she] found credible." Jayne-Chandler v. Comm'r of Soc. Sec. Admin., 2019 DNH 121, 2019 WL 3543717, at *8 (D.N.H. Aug. 5, 2019). Here, the ALJ did not find Begin's testimony about needing to elevate her legs, which was not documented anywhere else, consistent with the record. As discussed above, the ALJ's evaluation of Begin's subjective complaints withstands scrutiny. Thus, the VE hypothetical was not incomplete.

Second, Begin argues that contrary to the VE's testimony, an individual who is limited to "simple, routine tasks for two-hour blocks" could not perform the identified jobs because such a limitation would amount to being off task more than 10% of the time. Again, she is wrong. Consistent with the SSA's Program Operation Manual, district courts in this circuit have recognized that an "assessment of a capacity for concentration in two-hour blocks merely indicates that a claimant crosses the threshold for having a residual functional capacity for unskilled work, without imposing a cincture on the claimant's mental capacity that must be explained away by the [ALJ] if it is not incorporated into an RFC finding." McGrath v. Astrue, 2012 DNH 060, 2012 WL 976026, at *6 (D.N.H. Mar. 22, 2012)

(quoting Baker v. Soc. Sec. Admin. Com'r, No. 1:10-CV-00167-JAW, 2011 WL 1298694, at *6 (D. Me. Mar. 31, 2011)).[2]

Third, Begin argues that the ALJ failed to determine whether the number of jobs cited by the VE included part-time or full-time jobs and when those jobs were available. I have previously rejected the same arguments in other cases. See McCusker v. Saul, 2020 DNH 196, 2020 WL 6580598, at *9 (D.N.H. Nov. 10, 2020); Godin v. U.S. Soc. Sec. Admin., Acting Comm'r, 2017 DNH 239, 2017 WL 5515845, at *5-6 (D.N.H. Nov. 16, 2017). Begin cites no authority suggesting that a different outcome is warranted here. As I explained in Godin, there is no requirement that the VE testifies to only full-time jobs, as opposed to part-time jobs. See 2017 WL 5515845, at *5-6. In addition, here, as in Godin, the ALJ's questioning allows me to infer that she was referring to jobs that were currently available. See id.; see also Tr. 54-55. Accordingly, Begin's challenges to the ALJ's step five finding fail.

## IV. CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), I grant the Commissioner's motion to affirm (Doc. No. 11) and deny Begin's motion for an order reversing the Commissioner's

---

[2] For the same reason, Begin's argument that the VE's testimony on this topic is inconsistent with the Dictionary of Occupational Titles fails.

decision (Doc. No. 9). The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/ Paul J. Barbadoro<br>
Paul J. Barbadoro<br>
United States District Judge

September 14, 2021

cc: Counsel of record